```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF INDIANA
                       SOUTH BEND DIVISION
```

EZRA WATKINS,                     )
                                  )
Petitioner,                       )
                                  )
vs.                               )   CAUSE NO. 3:16-CV-062
                                  )
SUPERINTENDENT,                   )
                                  )
Respondent.                       )

## OPINION AND ORDER

This matter is before the Court on a Petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a person in State Custody Seeking Review of a Prison Disciplinary Sanction, filed by Ezra Watkins, a *pro se* prisoner, on February 8, 2016. Here, Watkins challenges a disciplinary determination made by a hearing officer at the Indiana State Prison ("ISP") under case number ISP 15-05-0210. For the reasons set forth below, the Court:

(1) **GRANTS** the habeas corpus petition (DE #1);

(2) **DIRECTS** the clerk to enter judgment; and

(3) **ORDERS** the Respondent to file documentation by **May 30, 2017**, showing that the guilty finding in ISP 15-05-0210 has been vacated and Ezra Watkins' earned credit time restored.

BACKGROUND

On May 27, 2015, Correctional Officer M.A. Cahill prepared a conduct report charging Watkins with Security Threat Group Activity. (DE #7-1.) The conduct report states:

> On 5-27-15 I c/o Cahill was assigned to Tower 11. At 1350 hrs. I observed J3 Watkins DOC #110511 displaying a large blue piece of cloth which was hanging from his right pocket. I had observed him exhibit this behavior repeatedly over the past few days I worked. When he noticed I was watching him, he took the cloth in his right hand and defiantly twirled it in a circle over his head repeatedly. As a result of his behavior & exhibition I contacted Investigator Abram who confirmed that J3 Watkins was affiliated with the Folks and his display of colors was indeed STG activity.

(*Id.*)

On May 27, 2015, Watkins was notified of the charge of Security Threat Group ("STG") Activity and served with a copy of the conduct report and the screening report. (DE #7-6.) The screening report reflects that he pled not guilty and requested a lay advocate. He did not request to call any witnesses, but asked for "all material from I.A. showing gang affiliation." (*Id.*)

On June 1, 2015, a hearing officer conducted a disciplinary hearing. At the hearing, Watkins's comment was, "Had towel for 12 yrs. He asked about the towel in the morning. I knew he was already profiling me - I threw it on the ground to show I'm not affiliated. I got no problem if they would confiscate it." (DE #7-8.) In an e-mail, Investigator Abram noted that "Gangster Disciples are said to wear blue and black as their color. In addition, 'folks' gangs all wear their identifiers to the right side indicating gang

-2-

affiliation to this allegiance." (DE #7-4.) Sgt. J. Schymanoske provided a written statement:

> Prior to Ofc. Cahill's observation at approx. 1350 I had asked J3 Watkins DOC# 110511 not to display his blue towel hanging from his pocket. When I confronted him he denyed [sic] any STG activity before I even mentioned the possibility of any STG connection. He also confronted me about it after throwing his towel down on the ground in checkpoint #2 after Ofc. Cahill seen him @ 1350.

(DE #7-2.) Relying on staff reports and a picture of the towel, the hearing officer found Watkins guilty of STG activity. He imposed a penalty of 30 days lost earned time credits. (*Id.*) Watkins appealed to the facility head and the final reviewing authority. (DE #7-9; DE #7-10.) The final reviewing authority modified the charge to Disorderly Conduct in violation of Code B236. (DE #7-10.)

DISCUSSION

When prisoners lose earned time credits in a prison disciplinary hearing, they are entitled to certain protections under the Due Process Clause: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision maker; (3) an opportunity to call witnesses and present documentary evidence in defense when consistent with institutional safety and correctional goals; and (4) a written statement by a fact finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974). To satisfy due process, there must also be "some evidence" to

support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Here, Watkins raises two claims, including that there was insufficient evidence to support the finding that he was guilty of disorderly conduct. In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985). The court will overturn the hearing officer's decision only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n,* 13 F.3d 1073, 1077 (7th Cir. 1994).

Watkins was found guilty of Disorderly Conduct B-236, which is defined as "exhibiting disruptive and violent conduct which disrupts the security of the facility or other area in which the offender is located." (DE #7-11.) Again, the conduct report states that "Watkins took the cloth in his right hand and defiantly twirled it in a circle over his head repeatedly." (DE #7-1.) A

-4-

conduct alone can be sufficient evidence to support a finding of guilty. *McPherson*, 188 F.3d at 786. However, in order to do so, "the report [must have] describe[d] the alleged infraction in sufficient detail [and leave] no question that the conduct described would violate the prison rule." *Id.* The conduct report here is not sufficient to show that Watkins engaged in disorderly conduct, because it contains no facts showing that Watkins exhibited violent conduct. See *Thompson v. State*, 5 N.E.3d 383, 390 (Ind. Ct. App. 2014) (recognizing that crimes of violence include acts that can result in serious bodily injury); see also Black's Law Dictionary Online http://thelawdictionary.org/violence/ (last visited March 27, 2017, noting that the term violence is synonymous with physical force). Tellingly, nothing in the conduct report indicates Ofc. Cahill feared for his safety or was in danger of being hit by the towel. Instead, Ofc. Cahill wrote the conduct report because he believed that Watkins was engaging in gang activity. However, the respondent now concedes that Watkins was not engaging in gang activity. Thus, there are no facts in the conduct report establishing that Watkins' twirling the cloth over his head exhibited violent conduct.

The respondent attempts to fill this void by pointing to Sgt. Schymanoske's statement, which reveals that Watkins later threw the towel on the ground and confronted Sgt. Schymanoske. (DE #7-2.) However, there is no indication that Watkins was provided with a

-5-

copy of Sgt. Schymanoske's statement prior to the hearing. It does not appear to have been attached to the conduct report nor does it seem to have been given to Watkins along with the screening report. Because of that, the Court cannot consider Sgt. Schymanoske's statement to be part of the charge.[1] Indeed, his statement concerns Watkins' actions toward him, which involves a different guard, at a different location and at a different time than described in the conduct report. Under *Wolff*, if jail officials wanted to charge Watkins based on his actions involving Sgt. Schymanoske, then Watkins was entitled to advanced written notice of that charge. But they did not. They only charged him based on his conduct observed by Ofc. Cahill.

While it is not entirely clear why Watkins twirled the towel over his head, it was unreasonable to conclude that his doing so amounted to "exhibiting violent conduct" based on the record before the Court. Accordingly, there is not "some evidence" that Watkins engaged in disorderly conduct under B-236.

CONCLUSION

For the reasons set forth above, the Court:

(1) **GRANTS** the habeas corpus petition (DE #1);

(2) **DIRECTS** the clerk to enter judgment; and

---

[1] As a threshold matter, this statement is ambiguous because it is unclear what transpired between Sgt. Schymanoske and Mr. Watkins.

(3) **ORDERS** the Respondent to file documentation by **May 30, 2017**, showing that the guilty finding in ISP 15-05-0210 has been vacated and Ezra Watkins' earned credit time restored.


DATED: April 5, 2017                    /s/ RUDY LOZANO, Judge
                                        **United States District Court**